13:12:40

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CADDO SYSTEMS, INC.,<br>et al., | )<br>)<br>) |
|        Plaintiffs, | )<br>) |
| v. | ) C.A. No. 22-1033(MN)<br>) |
| JETBRAINS AMERICAS, INC., | )<br>) |
|        Defendant. | ) |

Thursday, July 6, 2023
2:00 p.m.
Oral Argument


844 King Street
Wilmington, Delaware



BEFORE:  THE HONORABLE MARYELLEN NOREIKA
        United States District Court Judge



APPEARANCES:


       DEVLIN LAW FIRM LLC
       BY:  ALEX CHAN, ESQ.
       BY:  PETER AKAWIE MAZUR, ESQ.


           Counsel for the Plaintiffs

```
 1   APPEARANCES CONTINUED:

 2
              MORRIS JAMES LLP
 3            BY:  BRYAN TOWNSEND, ESQ.

 4            -and-

 5            BUTZEL LONG
              BY:  DANIEL G. VIVARELLI, JR., ESQ.
 6            BY:  AARON S. KAMLAY, ESQ.

 7                    Counsel for the Defendant

 8

 9

10                    _ _ _ _ _ _ _ _ _ _ _

11
```

13:40:12 12

13:40:12 13          THE COURT:  All right.  Good afternoon,

14:01:14 14   everyone.  Please be seated.  All right.  Some brief

14:01:18 15   introductions.

14:01:24 16          MR. MAZUR:  Good afternoon, Your Honor.  Peter

14:01:27 17   Mazur from Devlin Law Firm on behalf of plaintiffs.  With me

14:01:30 18   today is Alex Chan, also of Devlin Law Firm, who will be

14:01:34 19   taking the lead for plaintiffs today.

14:01:36 20          THE COURT:  Okay.

14:01:40 21          MR. TOWNSEND:  Good afternoon, Your Honor.

14:01:41 22   Bryan Townsend from Morris James on behalf of the

14:01:45 23   defendants.  My co-counsel is Daniel Vivarelli who will be

14:01:46 24   making the presentation, and Aaron Kamlay, both of Butzel

14:01:52 25   Long.

14:01:53  1                    THE COURT:  Good afternoon to both of you.

14:01:55  2            So I have the motion to dismiss, direct,

14:01:58  3    inducement, contributory and joint.  We've read the papers.

14:02:04  4    I have read the complaint.  The complaint is actually pretty

14:02:07  5    fulsome, but I will give you an opportunity to tell me why

14:02:10  6    it is not sufficient.  And let me just pull up the complaint

14:02:17  7    so I have a copy of it here in front of me.

14:02:21  8                    MR. VIVARELLI:  Thank you, Your Honor.  Good

14:02:23  9    afternoon.  May it please the Court, Dan Vivarelli from

14:02:28 10    Butzel Long Washington D.C. on behalf of defendant,

14:02:30 11    Jetbrains Americas.  I think we're going to get to this, but

14:02:34 12    part of the concern that we have is there are a lot of words

14:02:36 13    that don't actually give rise and meet the plausibility

14:02:39 14    standard, but we'll get into that.  I would invite the Court

14:02:43 15    to not be misled by how much is said but focus on what is

14:02:48 16    said in the complaint.

14:02:48 17            Just a little bit of background because this is

14:02:51 18    our first time here in this case appearing before you.  The

14:02:54 19    defendant in this case is Jetbrains Americas, Inc., which is

14:02:57 20    a wholly owned subsidiary of a company called Jetbrains, a

14:03:02 21    Czech Republic company that makes software, and Jetbrains

14:03:02 22    Americas, Inc. is a U.S. sales support organization that

14:03:12 23    sells the software in the United States to customers in the

14:03:12 24    United States.

14:03:17 25            The software tools at issue are called

14:03:19 1    Integrated Development Environment or IDE which you may have

14:03:24 2    seen.  And what they are is they're tools that allowed

14:03:27 3    computer programers to write other computer programs.

14:03:31 4    Right.  So you can think of it as like a Microsoft Word for

14:03:35 5    a computer programmer.  They are not websites, they are not

14:03:40 6    anything like websites, these are complex pieces of software

14:03:44 7    that allow, you know, through the features, enhanced

14:03:47 8    features and functionality, software developers to

14:03:51 9    efficiently program code that ultimately becomes other

14:03:55 10   software programs.

14:03:55 11            And for some of these IDE's, Jetbrains actually

14:04:00 12   gives away free versions of the software.  Others of the

14:04:04 13   IDE's in some versions they sell and the users can download

14:04:09 14   and use the free version of development software or if they

14:04:13 15   purchase one of those other versions, they can then download

14:04:17 16   and use the purchased version of the software.

14:04:19 17            The technology at issue in this case, Your

14:04:21 18   Honor, is a well-known navigation feature that at a high

14:04:25 19   level within the software or within a website or whatever

14:04:29 20   you're talking about, it keeps track of where a user is as

14:04:33 21   it's navigating through software and then allows the user to

14:04:39 22   navigate in some form or fashion back to where it came from,

14:04:42 23   sort of like what you would think of maybe as the Hansel and

14:04:46 24   Gretel breadcrumbs idea from the old fairy tail.  The

14:04:52 25   plaintiffs' patents refer to the software as the active

patent, and some of the patents have the title Active Patent Navigation.  The defendant's software, that feature that they have alleged is the navigation bar, or what we all also call the nav bar for short, as this case continues on, we're going to find that this nav bar, navigation bar is one of the least utilized if not the least utilized feature for navigating within an IDE.

Another thing I would like to note, Your Honor, is that all of the patents in this case have expired.  Some of the patents expired a year ago, two of them, and then three of the patents expired about ten months ago.

So turning to the motion, Your Honor, there are four critical errors that demonstrate why plaintiffs' complaint fails to meet the plausibility standard.  First, plaintiffs ignore the fact that they assert method claims, not product claims.  But in their opposition, plaintiffs rely on cases or parts of cases that reference product cases.  For example, in their opposition with respect to Your Honor's Logan Tree opinion, they reference claims 1 and 13 which were the device and system claims and wholly ignore Your Honor's analysis of claim 20 which is the method claim that Your Honor found was implausibly pled.  And as we'll discuss when we get to direct infringement in a minute, this has a significant impact on the direct infringement allegations.

14:06:26  1          Second, the plaintiffs conflate the accused

14:06:31  2   instrumentalities with the accused functionality.  In other

14:06:34  3   words, what the plaintiffs do in the complaint is they

14:06:37  4   equate the IDE itself with the nav bar, but those are not

14:06:43  5   the same thing.  And this is the reason, largely why the

14:06:48  6   plaintiffs' contributory infringement allegations are

14:06:51  7   implausible.

14:06:52  8          Third, the complaint references web pages and

14:06:55  9   websites and include other haphazard references to websites

14:06:59 10   which appear to have come from other complaints that

14:07:02 11   defendant filed in earlier cases.  This in and of itself

14:07:06 12   makes some of the plaintiffs' allegations implausible.

14:07:09 13          And fourth, plaintiffs now argue in their

14:07:12 14   opposition words that don't appear in the complaint.  And

14:07:17 15   the plaintiffs cannot survive a plausibility standard by

14:07:21 16   adding words in their opposition that lack or are not even

14:07:25 17   in their complaint.

14:07:26 18          Now, I would like to focus on the direct

14:07:28 19   infringement allegations, Your Honor.  The complaint --

14:07:31 20          THE COURT:  You are going to give me some

14:07:33 21   examples of these things, right?

14:07:34 22          MR. VIVARELLI:  Yes.

14:07:35 23          THE COURT:  These three, four things you just

14:07:40 24   gave me?

14:07:40 25          MR. VIVARELLI:  Yes, the complaint in this case

14:07:42 1  is similar to the complaint in Logan Tree.

14:07:45 2        THE COURT:  Show me what they're saying are the

14:07:48 3  allegations and why they're not enough.  Don't tell me about

14:07:51 4  Logan Tree, I get it, I know there is a difference, you

14:07:54 5  can't sell a method claim, someone has to practice it.  If

14:07:57 6  there is no allegations that you practice it in terms of

14:08:01 7  direct infringement, then it goes.  I get that.  So let's

14:08:05 8  focus -- I know that.  Okay?  I need you to focus me on the

14:08:10 9  allegations that they say are sufficient.

14:08:14 10        MR. VIVARELLI:  So, yes, Your Honor.  So, for

14:08:16 11  example, in -- the '411 infringement paragraph of the

14:08:25 12  complaint, paragraph 27.

14:08:34 13        THE COURT:  Yes.  So the making, using, selling,

14:08:38 14  offering to sale and/or importing.  So what I would say is

14:08:43 15  they're method claims.  To the extent they're method claims,

14:08:46 16  the making, selling, offering to sell and/or importing into

14:08:50 17  the United States are gone because those aren't acts of

14:08:53 18  infringement that you can tag defendant with.  But let's

14:08:57 19  stick with using.

14:08:59 20        MR. VIVARELLI:  Yes, Your Honor.  That is the

14:09:01 21  basis of our motion.

14:09:02 22        THE COURT:  And so I know, I think Judge Burke

14:09:06 23  has had cases where if they're alleging that in the

14:09:10 24  development of these things that your company uses them, not

14:09:12 25  just, you know, sells the software, but you use it to test

14:09:16  1    it and things like that that maybe that's enough to get you

14:09:19  2    through at the motion to dismiss stage.  So what is it that

14:09:22  3    they say you do?

14:09:24  4             MR. VIVARELLI:  So they say -- they don't say

14:09:26  5    that we do anything.  They say that the accused

14:09:29  6    instrumentalities do things without attributing it to either

14:09:32  7    the defendant or any user for that matter.  They say we make

14:09:38  8    -- they repeat that statutory language and at every

14:09:41  9    allegation, if you look at, for example, paragraph 28 --

14:09:45 10    sorry, 29, by way of example, the accused instrumentalities

14:09:50 11    provide a method.  Paragraph 30, the accused

14:09:55 12    instrumentalities provide -- they're not attributing the act

14:09:59 13    of infringement to anyone, much less us, the defendant.  And

14:10:06 14    with respect to, Your Honor, with respect to the use and

14:10:08 15    development, none -- as I mentioned, none of these products

14:10:12 16    are developed in the United States.  The only arguable

14:10:15 17    alleged use is in support of sales within the United States,

14:10:19 18    it's a de minimis amount of use.

14:10:22 19             THE COURT:  I get it, maybe it is de minimis,

14:10:26 20    but if it's alleged appropriately, then maybe you get past a

14:10:31 21    motion to dismiss.  But I get it, it's probably not even

14:10:34 22    worth your fighting about it in terms of dollar value

14:10:37 23    because it's less money for damages than it cost you to

14:10:42 24    write a brief.

14:10:45 25             MR. VIVARELLI:  I think Your Honor said it best,

14:10:45  1  everything but the use claims are arguably gone.  We would

14:10:48  2  argue --

14:10:49  3          THE COURT:  I wouldn't say arguably, they seem

14:10:51  4  gone, unless there are non-method claims.  Are there

14:10:56  5  non-method claims asserted?

14:10:57  6          MR. VIVARELLI:  No.

14:10:58  7          THE COURT:  Do you agree?

14:10:59  8          MR. CHAN:  Your Honor, we agree.

14:11:01  9          THE COURT:  Stand up when you're talking, but

14:11:03 10  yes, he agrees.

14:11:05 11          So show me then where -- plaintiff, show me

14:11:09 12  where you assert -- we're going to take this piece by piece.

14:11:12 13  I don't want to hear big long arguments.  Let me hear from

14:11:15 14  him.  Piece by piece, I understood his argument, it was

14:11:19 15  look, you got to show that Jetbrains, the defendant here,

14:11:22 16  uses it.  You don't say Jetbrains uses it in the United

14:11:29 17  States, you say the software can do this.  So where do you

14:11:33 18  say Jetbrains uses it?  Now I have the complaint so you can

14:11:43 19  point me to whatever you're looking at.

14:11:46 20          MR. CHAN:  Yes, Your Honor.  So let me direct

14:11:48 21  your attention back to paragraph 27 of the complaint.  I

14:11:52 22  think we included a screenshot, the screenshot, if you look

14:11:57 23  at the top, the file name it's called test up server.  I'm

14:12:02 24  sorry the text is too small to read.  But this is actually

14:12:02 25  test file -- bottom of page 6 of the complaint.

14:12:12 1          THE COURT:  Test server.  Okay.

14:12:16 2          MR. CHAN:  This was a test file that was

14:12:17 3  actually published and compiled by the defendant itself,

14:12:21 4  this is a screen grab, the language is at the top of page 7,

14:12:25 5  you can go to the top of that web page and see the exact

14:12:29 6  screen shot.

14:12:30 7          THE COURT:  This isn't something you did with

14:12:31 8  using their software?

14:12:32 9          MR. CHAN:  No, no, this is directly from the

14:12:34 10 defendant's website.  This is a test file that the defendant

14:12:38 11 published and they can only do that because they're using

14:12:40 12 it.  They created this file.  It's called Test Observer, the

14:12:45 13 link available at the very bottom.  This is one instance in

14:12:48 14 which the instrumentality is being used by the defendant

14:12:50 15 itself, but also if I may direct your attention --

14:12:55 16         THE COURT:  But is this where they're using it,

14:13:00 17 does it -- I mean, have you hit all of the, whatever you're

14:13:07 18 asserting that they -- all the claims require by this?

14:13:11 19         MR. CHAN:  Yeah, if you go to page 8,

14:13:14 20 paragraph 29 of the complaint, the top of the page 8 of the

14:13:18 21 complaints, this is where they actually navigate the accused

14:13:22 22 functionality or implement or use the accused functionality,

14:13:24 23 the drop down, that's exactly the functionality that is

14:13:29 24 being accused of infringement.

14:13:30 25         THE COURT:  You're not saying they do it, you do

14:13:32  1    understand the words here don't say they do it?

14:13:36  2              MR. CHAN:  Well, I don't think the standard

14:13:37  3    requires us to be explicit about using because we have

14:13:40  4    provided evidence, right, but at the end of the day --

14:13:44  5              THE COURT:  Wait a second.  You do have to say

14:13:46  6    -- if you had no basis to think that they ever used the

14:13:49  7    software in the United States, let's say this company wasn't

14:13:53  8    in the United States, they didn't sell in the United States,

14:13:58  9    it was a foreign company and they only sold overseas, you

14:14:03 10    couldn't just say oh, by the way, the software, if it makes

14:14:07 11    it into the U.S. it does these things, you have to say

14:14:10 12    they're doing it.  So why don't you have to say they're

14:14:13 13    doing it?

14:14:14 14              MR. CHAN:  I want to be very clear, conceptually

14:14:17 15    we believe we already stated those facts that they're using

14:14:19 16    it because the screen shots right, by navigating and having

14:14:23 17    those screen grabs --

14:14:25 18              THE COURT:  How in the world would I know from

14:14:27 19    reading this complaint that you are saying that this is

14:14:30 20    something that they put out there and it shows them using

14:14:36 21    it?

14:14:38 22              MR. CHAN:  Well, again, I think this --

14:14:40 23              THE COURT:  Show me the words.

14:14:41 24              MR. CHAN:  Which words?

14:14:42 25              THE COURT:  The words that say look, this is a

14:14:45  1    screen shot of defendant's stuff, defendant is using it.

14:14:49  2              MR. CHAN:  Well, the fact of the matter is we

14:14:51  3    included links directly from their web page is an indication

14:14:56  4    that they're using it.  We couldn't have possibly received

14:15:02  5    or gotten --

14:15:03  6              THE COURT:  You don't think that I could just

14:15:05  7    grant this motion and you could go fix this and actually

14:15:08  8    make it much clearer what you're saying, right?

14:15:11  9              MR. CHAN:  We would, but let me just put this

14:15:13  10   point out there.  Since the filing of this motion, the

14:15:17  11   plaintiffs have served their preliminary infringement

14:15:20  12   contentions with similar allegations, and that was --

14:15:23  13             THE COURT:  Maybe you ought to be careful about

14:15:25  14   what you say because if you don't, you might just wind up

14:15:29  15   with no direct infringement case.  And maybe if it's really

14:15:32  16   as de minimis as he's saying, you don't want to have to have

14:15:36  17   a script.

14:15:38  18             MR. CHAN:  The script is di minimis, not to

14:15:40  19   mention a lot of facts that they're mentioning now is

14:15:42  20   subject to discovery.  They could say they don't make, but I

14:15:42  21   think the discovery itself would review whether they make or

14:15:48  22   don't make the accused functionality that is being accused

14:15:50  23   of infringement here.  That being said, they haven't really

14:15:54  24   mentioned or flagged any issues for that contention.  They

14:15:58  25   certainly haven't moved to strike our contentions --

14:16:02 1          THE COURT:  That doesn't mean that they're going

14:16:03 2     to agree that your contentions are sufficient.  It seems

14:16:06 3     pretty clear -- look, if you think you're going to get to

14:16:09 4     the jury and say the software does this, we don't know who

14:16:15 5     does it, we don't know -- we cannot identify anyone or any

14:16:20 6     combination of people who do it, you're not going to get to

14:16:24 7     the jury.  You have to show direct infringement and that

14:16:27 8     usually involves someone doing the infringement.  And you

14:16:30 9     have not given that.  And if that's the way your contentions

14:16:33 10    are, your contentions might need to be revised.

14:16:37 11          MR. CHAN:  Understood, Your Honor.  Thank you

14:16:38 12    for the words of wisdom.

14:16:40 13          But I do want to point your attention back to

14:16:43 14    paragraph 27 because in that paragraph we're pretty explicit

14:16:46 15    that the defendant has and continues to directly infringe by

14:16:49 16    making and using, so I don't understand, that's a statutory

14:16:52 17    language, but our assumption that by stating that statute --

14:16:56 18          THE COURT:  How are they directly infringing a

14:16:59 19    method claim by making it?  They're not, right?

14:17:02 20          MR. CHAN:  Agreed.

14:17:02 21          THE COURT:  And the fact that you have making,

14:17:02 22    using, selling, offering to sell and/or importing tells me

14:17:11 23    there is not a lot of thought going into that allegation

14:17:14 24    that I'm suddenly going to put some real emphasis on the --

14:17:21 25    their using it.  Your Honor, we said they're using it.  And

14:17:24 1    then you go to say, not the defendant is doing this stuff,

14:17:28 2    you're saying that there are servers that are under the

14:17:32 3    control of the defendant.  Okay?  They're offering for sale

14:17:36 4    stuff.  I mean, none of this seems to be infringing.  You're

14:17:41 5    talking -- I mean, they're selling and offering to sell

14:17:47 6    applications designed to assist and enhance the writing,

14:17:50 7    editing and debugging of code, including the IDE's, offered

14:17:56 8    for sale, you're talking about selling things, you're not

14:18:00 9    talking about using, so I don't care about that so much.

14:18:04 10   Stuff is maintained on their servers that are accessible

14:18:07 11   from the United States under their control, but doesn't say

14:18:10 12   that they actually use the stuff.  Software including

14:18:14 13   without limitation software that allows content to be

14:18:18 14   interactively presented in and/or served to users through a

14:18:23 15   desktop application including but not limited to the web

14:18:25 16   storm application, again, they sell that stuff, but it

14:18:30 17   nowhere says they use it.  And don't forget that they also

14:18:34 18   offer services.  Okay.  The services that -- so again, I'm

14:18:41 19   not sure I understand how the services say that they're

14:18:42 20   using it.

14:18:42 21         This is what I am going to do.  I am going to

14:18:42 22   grant the motion on direct infringement because I don't

14:18:52 23   think that you have actually said that Jetbrains does any of

14:18:56 24   these things in the United States.  But I will do so without

14:19:00 25   prejudice and you can try and clean up your complaint and

14:19:03  1    make clear what you are alleging with respect to what they

14:19:11  2    are doing and take out the stuff that is not an act of

14:19:16  3    infringement with respect to the defendants.

14:19:19  4              And if you have reason to believe they're doing

14:19:22  5    it in the United States, you should put that in here, too,

14:19:24  6    because I can't tell whether any of this stuff is in the

14:19:28  7    United States.

14:19:30  8              All right.

14:19:32  9              MR. CHAN:  Thank you.  Just a point of

14:19:33 10    clarification, so you would like us to amend the complaint

14:19:37 11    --

14:19:37 12              THE COURT:  I want you to amend the complaint to

14:19:40 13    actually if you believe you have allegations of direct

14:19:42 14    infringement, you should make them.  If you don't, if you

14:19:45 15    don't have any reason to believe that they are using this in

14:19:48 16    the United States, then don't make them.

14:19:52 17              MR. CHAN:  Understood.  Thank you, Your Honor.

14:19:54 18    Is there a deadline by when you would want us to file the

14:19:59 19    amended complaints?

14:20:00 20              THE COURT:  If you want to do it, you should do

14:20:01 21    it within a month.

14:20:03 22              MR. CHAN:  Thank you, Your Honor.

14:20:04 23              THE COURT:  All right.  Indirect infringement.

14:20:09 24              MR. VIVARELLI:  Your Honor, in the interest of

14:20:11 25    time, I would like to turn to joint infringement next if

14:20:14 1    possible.

14:20:15 2                    THE COURT:  Okay.

14:20:17 3                    MR. VIVARELLI:  The complaint --

14:20:24 4                    THE COURT:  By the way, when you do -- just

14:20:26 5    because I'm looking at paragraph 42, when you do amend your

14:20:30 6    complaint, I do not accept "and/or" because I do not

14:20:35 7    understand what that means.  If you mean that they do

14:20:38 8    multiple things, say "and", if you mean they do one or the

14:20:41 9    other, you can say "or", or you can say, you know, one or

14:20:45 10   the other or both, but "and/or" I just think is wishy washy

14:20:51 11   language that makes pleadings unclear.

14:20:53 12                   MR. CHAN:  Thank you, Your Honor.

14:20:55 13                   THE COURT:  Joint infringement.

14:20:56 14                   MR. VIVARELLI:  The paragraph 41 of the

14:21:00 15   complaint with respect to '411 is the same for all the other

14:21:02 16   asserted patents.  There is two problems with the joint

14:21:06 17   infringement claims.  They proceed under a direct and

14:21:09 18   control theory, but any reasonable investigation of the

14:21:12 19   software reveals that there are numerous --

14:21:16 20                   THE COURT:  Reasonable investigation?  I mean,

14:21:19 21   come on, we're at a motion to dismiss.  How am I supposed to

14:21:22 22   deal with a reasonable investigation and you're going to

14:21:26 23   tell me what they say isn't true?

14:21:28 24                   MR. VIVARELLI:  Well, the point we're making is

14:21:30 25   that it's clear that there is no direction and control, the

users --

THE COURT:  You agree that it's clear that there is no direction or control?

MR. CHAN:  We absolutely disagree.  I think we have examples given there.

MR. VIVARELLI:  Turning to the examples, the examples are directed at websites and benefits of websites.  For example, the complaint says that the users -- that Jetbrains generates revenue from the users using the website which we don't have through the sale of goods and services which does not occur in an IDE.  And so what they did was they took --

THE COURT:  Why isn't that inducement or contributory infringement to the extent it's anything?

MR. VIVARELLI:  They're talking about conditions upon participation and benefits in the joint infringement claim, but this is a software that a user downloads, the user is free to use it as it sees fit or not use it at all.  There is absolutely no direction and control here.  And they have not alleged joint enterprise.  There is just no joint infringement here.  In fact, they can't --

THE COURT:  My problem is you're arguing the substance, and that's -- I don't know what I'm supposed to do with that on a motion to dismiss when they have alleged something different.

14:22:43 1          MR. VIVARELLI:  But their theory is implausible,

14:22:46 2     they can't plausibly plead on the one hand --

14:22:49 3          THE COURT:  I get it, that's what you

14:22:51 4     understand.  I'm not picking that up from this that it's

14:22:54 5     implausible.  Go ahead, explain to me.  Explain it to me not

14:23:01 6     by pulling out knowledge that you know or facts that will

14:23:05 7     come out in discovery, but why the language here is not

14:23:10 8     plausible.

14:23:11 9          MR. VIVARELLI:  Because in the complaint they

14:23:13 10    acknowledge that the user downloads and uses the software.

14:23:17 11    That's the beginning and end of the transaction, they do

14:23:20 12    whatever they want.  They don't say how we direct and

14:23:24 13    control the navigation feature.  They don't say that we tell

14:23:29 14    our customers use this navigation feature.  They don't say

14:23:33 15    that we insist that they do this.  They just basically in a

14:23:38 16    very blanket statement say we direct and control our users

14:23:43 17    and nothing more.

14:23:44 18         THE COURT:  They say, "for example, by

14:23:46 19    conditioning participation by third parties and/or end users

14:23:50 20    through the use of the '411 accused instrumentalities as the

14:23:54 21    primary means of navigation."

14:23:57 22         MR. VIVARELLI:  That's not true, we do not --

14:23:59 23         THE COURT:  Not true doesn't help me on a motion

14:24:02 24    to dismiss.  I'm not saying I don't believe you, but it's a

14:24:05 25    motion to dismiss, I don't get to make true, not true

14:24:09 1    determinations unless it's entirely, you know, conclusory or

14:24:15 2    if it's contradicted by something else.  I don't -- tell me

14:24:23 3    what case you have that says I can say that's not true, and

14:24:26 4    the reason I know it's not true is because you say it's not

14:24:30 5    true.

14:24:31 6              MR. VIVARELLI:  I'm not prepared to give you a

14:24:34 7    case off the top of my head, Your Honor, but our view is

14:24:37 8    it's just a completely inadequate restatement of the statute

14:24:40 9    without any --

14:24:42 10              THE COURT:  Well, conditioning participation

14:24:44 11    through the use of the instrumentalities as the primary

14:24:47 12    means of navigation, that's not just reciting back words.

14:24:56 13              Look, I'm going to deny it.  I take your point

14:24:59 14    and maybe as discovery will show there isn't anything to

14:25:02 15    this, but I can't grant a motion to dismiss because you

14:25:07 16    think something is not true.  And I am not doubting you,

14:25:11 17    that may be it, but I also, I have to take well-pleaded

14:25:15 18    allegations as true.  And doing so, you have to win with me

14:25:20 19    taking them as true, not by saying they're not true.

14:25:23 20              MR. VIVARELLI:  Yes, Your Honor.

14:25:24 21              THE COURT:  All right.  Indirect infringement.

14:25:29 22              MR. VIVARELLI:  Starting with induced, Your

14:25:31 23    Honor.

14:25:31 24              THE COURT:  Sure.

14:25:32 25              MR. VIVARELLI:  Okay.  The fatal flaw with the

14:25:35 1    induced is that none of the purported acts of inducement

14:25:39 2    result in an underlying direct infringement.  The complaint

14:25:42 3    gives all these examples of how we encourage the users to

14:25:45 4    use the IDE.  Their patent claims don't relate to the IDE.

14:25:51 5    Their patent claims relate to a specific feature within the

14:25:53 6    IDE.  And their complaint does not say that we induce our

14:25:58 7    customers to use that particular feature.  That's the gist

14:26:02 8    of the argument there.

14:26:04 9          So there is -- the problem is is that this goes

14:26:08 10    back to Your Honor's Logan Tree case, there is no underlying

14:26:12 11    act of direct infringement, and that has to be there for

14:26:17 12    there to be a plausible indirect infringement, induced

14:26:22 13    infringement claim.

14:26:22 14          THE COURT:  But so if the customers -- I

14:26:25 15    understand this is the least possibly used aspect of the

14:26:31 16    whole thing, but let's assume that there is a customer out

14:26:37 17    there who loves this navigation bar and uses it, and he uses

14:26:45 18    it because you -- even though you know about the patents and

14:26:48 19    you know that they contend that they infringe, that this

14:26:50 20    navigation bar infringes, he uses it because you give it to

14:26:54 21    him and make it available to him.  Is that enough --

14:26:59 22          MR. VIVARELLI:  I'm sorry --

14:27:00 23          THE COURT:  -- for allegation, is that

14:27:04 24    inducement?

14:27:05 25          MR. VIVARELLI:  Not according to this complaint

because they haven't alleged an underlying act of direct infringement.

THE COURT:  Because they don't say anybody is actually doing it, it's just what the software does?

MR. VIVARELLI:  Correct.  And encouraging -- the other thing I will say is the example, the six examples they give, they encourage the user to do something other than the actual arguably alleged patented method.  If I told -- we say we tell our users go write code.  Right?  Okay.  That's not go navigate according to the patent.  And that's what inducement requires.  And so, you know, candidly I'm not saying there is not an induced infringement claim that they could articulate, they just haven't done it.

THE COURT:  All right.  Where could you say that they induce them to use the navigation, that's the claimed navigation?

MR. CHAN:  Your Honor, I think on the point about the navigation being least used, I'm going to address that very quickly.

THE COURT:  I don't want to hear that.

MR. CHAN:  Understood.

THE COURT:  He said it, I don't know if it is or not, I was letting him know I was actually listening to what he said.

MR. CHAN:  I think paragraph 37 of the complaint

14:28:29 1    covers a number of scenarios and examples given along with

14:28:33 2    supporting links.  The inducement goes beyond just

14:28:36 3    encouraging customers and third parties to make use of the

14:28:40 4    accused instrumentalities.  For example, we can go through

14:28:44 5    it one by one.  The first one it talked about how it

14:28:47 6    provides the accused products to users and customers and

14:28:51 7    partners as far as how to use them, and the second thing --

14:28:54 8            THE COURT:  Do you say that anyone uses the

14:28:58 9    accused navigation thing?

14:29:00 10           MR. CHAN:  Yeah, if you look at the third line,

14:29:03 11   intending them to use the '411 instrumentalities that enable

14:29:07 12   and make use of the content published therein, so in this

14:29:12 13   instance for the source code, for example, they are

14:29:16 14   intending the third parties and customers to use the accused

14:29:19 15   instrumentalities.

14:29:20 16           And the next one, encouraging them to

14:29:22 17   communicate with each or about these instrumentalities

14:29:25 18   through sales and marketing.  And then the third one would

14:29:28 19   be providing a technical support portal where whenever you

14:29:33 20   have a technical issue in association with the accused

14:29:33 21   instrumentality or the functionality, that's where they get

14:29:40 22   to go and find answers.  Right?  So, for example, if they

14:29:42 23   had an issue with the nav bar, they can actually go to this

14:29:47 24   support portal and get answers.  And then if you go to the

14:29:50 25   next page on page 12 of the complaint, they also provide

14:29:55 1  contact information of tech support if they have issues with

14:29:58 2  nav bar, that's where they get the contacts, the Jetbrains

14:30:02 3  technical support team.

14:30:04 4           And the next one would be a community platform

14:30:08 5  that is curated by the community where they get to discuss

14:30:10 6  all the issues and tricks and strategies about how to use,

14:30:13 7  for example, the nav bar, and we again included a Facebook

14:30:18 8  page for one of the accused products.

14:30:19 9           THE COURT:  Sorry, where are you looking?

14:30:22 10          MR. CHAN:  This is still on page 12 of the

14:30:24 11 complaint, still within paragraph 37.  So I'm at the top of

14:30:30 12 --

14:30:30 13          THE COURT:  So how does this -- I know this has

14:30:33 14 to do -- what I don't understand is, is the '411 accused

14:30:38 15 instrumentalities, is that the nav bar or is that the entire

14:30:45 16 IDE?  Like, I don't know what -- so are you saying -- are

14:30:51 17 you recommending that they use the nav bar or are you

14:30:54 18 recommending that they use the software that they gave them,

14:30:57 19 whether they use the nav bar or not?

14:31:02 20          MR. CHAN:  I think there is some confusion --

14:31:05 21          THE COURT:  Show me where you just find accused

14:31:07 22 instrumentalities so we know what you're saying there.

14:31:22 23          MR. CHAN:  Give me a second.  So with the

14:31:30 24 accused instrumentalities with respect to the '411 patent,

14:31:35 25 under paragraph 27, I think you have probably gone through

14:31:39  1    that paragraph already.

14:31:41  2            THE COURT:  So, but it's not -- you would agree

14:31:44  3    if someone uses, or do you agree someone can use these

14:31:50  4    applications and if they don't use the nav bar, they're not

14:31:56  5    infringing?

14:31:57  6            MR. CHAN:  But they do use the nav bar because

14:32:00  7    -- and I can tell you why because --

14:32:02  8            THE COURT:  Do you allege that?

14:32:04  9            MR. CHAN:  Well --

14:32:06 10            THE COURT:  I'm just saying, can you use these

14:32:08 11    instrumentalities or these applications without using the

14:32:10 12    nav bar?

14:32:11 13            MR. CHAN:  In our opinion no, because as the

14:32:14 14    primary means of navigation, the nav bar, the whole purpose

14:32:18 15    of the nav bar which they didn't mention is you get to input

14:32:21 16    define syntax or libraries for use of the source code, so

14:32:24 17    it's part of the code of development.  You can't detach that

14:32:29 18    navigation bar from the IDE.  They're trying to make you

14:32:32 19    believe yes, the whole thing would function perfectly

14:32:35 20    without that nav bar and the end result is you can't, and at

14:32:38 21    this pleading stage you have to accept that fact as true.

14:32:42 22            THE COURT:  You don't even say it, is my

14:32:44 23    problem.  I guess read broadly, you're saying if you use

14:32:47 24    this by definition you're using the nav bar, is that what

14:32:51 25    you're telling me?

14:32:52  1           MR. CHAN:  Correct.

14:32:53  2           THE COURT:  Okay.  And you don't know if that's

14:32:55  3   true or not, but you think it must be, you're basing that

14:32:59  4   assumption on the fact that you don't think it would work if

14:33:02  5   you didn't.

14:33:03  6           MR. CHAN:  Well, that is the basis, that is why

14:33:06  7   we believe you can't detach those two things.  They're both

14:33:09  8   integrated into a single software package, you can't

14:33:12  9   facility a code development without the nav bar.  Now, they

14:33:16 10   may disagree, they may rebut that, but again, this is not an

14:33:20 11   evidentiary hearing.  Right?  The question is -- the

14:33:23 12   question is whether we have pled sufficient facts and we

14:33:27 13   have those facts, now we're just talking about the weight of

14:33:31 14   those facts.

14:33:33 15           THE COURT:  I don't know.  What I'm trying to

14:33:34 16   figure out is -- I mean, what I don't know is are we talking

14:33:38 17   about an instance where you say, you know, I have an iPhone

14:33:43 18   with a whole bunch of apps.  Some apps I never use, but

14:33:46 19   they're on my iPhone.  Is this the kind of thing where

14:33:50 20   you're saying someone is inducing me to use the app I never

14:33:54 21   use, or is this something where it has to be like -- it's

14:33:59 22   basically what you're saying is it's like you can't use the

14:34:02 23   phone without doing it because it's like the button that

14:34:06 24   turns it on.  That's what I'm not understanding.

14:34:10 25           MR. CHAN:  So, you know, they have produced

14:34:13 1    discovery showing exactly how many users are using -- a

14:34:16 2    maximum number of users using nav bar, we're talking about

14:34:21 3    tens of thousands.  That's why it baffles me about --

14:34:24 4              THE COURT:  How many of these things have --

14:34:26 5    like how many users do they have?

14:34:29 6              MR. CHAN:  So on a monthly basis, this is

14:34:31 7    obviously confidential and so, you know, subject to

14:34:34 8    confidentiality, but --

14:34:36 9              THE COURT:  Well, we're standing in open court.

14:34:39 10             MR. CHAN:  Which I can't discuss other than

14:34:41 11   giving you their five high digit numbers and even six figure

14:34:46 12   numbers on a monthly basis, that's sort of the range that

14:34:48 13   we're talking about.

14:34:49 14             THE COURT:  That use the software or use the nav

14:34:52 15   bar?

14:34:53 16             MR. CHAN:  That use the nav bar.  It says the

14:34:55 17   maximum percentage of nav bar users.  That is in the

14:34:58 18   discovery that produce statistics exactly how many users on

14:35:01 19   a per monthly basis from 2021 all the way up to 2022, as to

14:35:06 20   the number of users that are using the nav bar.  So if you

14:35:10 21   combine those, we're really talking about more than a

14:35:12 22   million users using the nav bar.  And I will just maybe just

14:35:18 23   for the record, the discovery they produced is Jet000435.

14:35:30 24             THE COURT:  All right.  Defendant, can give a

14:35:37 25   response?

14:35:37  1            MR. VIVARELLI:  Two quick comments to clarify

14:35:39  2    this.  First of all, they know that less than a hundred

14:35:41  3    percent, significantly less than a hundred percent of the

14:35:44  4    users use the nav bar.  They also know that the reason is is

14:35:48  5    because Jetbrains tells you how to turn it off.  One of the

14:35:52  6    YouTube videos they cite to in their complaint actually

14:35:55  7    shows you that you can turn the nav bar on and off and it is

14:35:59  8    in fact not a primary means or a necessary means of

14:36:01  9    navigation.

14:36:02 10            What it all comes down to, I think Your Honor is

14:36:04 11    on to the point is they're conflating the accused

14:36:08 12    instrumentality with the nav bar, the accused functionality,

14:36:12 13    and that's why this inducement claim is not plausibly pled.

14:36:17 14            THE COURT:  All right.  So I am going to deny

14:36:19 15    the motion to dismiss.  But I will say this, if you're doing

14:36:23 16    contentions, this is not going to suffice.  If you think

14:36:27 17    that it's the nav bar that is infringing, when you get

14:36:32 18    discovery, you need to be clear what you are accusing of

14:36:35 19    infringement.  It can't be everything that's sold even if

14:36:39 20    you know that only 55 percent use the nav bar.  You need to

14:36:41 21    be specific in what you are accusing of infringement.  And

14:36:47 22    it can't just be every accused instrumentality without any

14:36:51 23    specifics and any context as to what is actually infringing.

14:37:00 24    All right?  So that's denied.

14:37:01 25            Is the contributory infringement the same?

14:37:06  1          MR. VIVARELLI:  The point about contributory

14:37:07  2   infringement is they basically commit the error that you

14:37:11  3   pointed out --

14:37:12  4          THE COURT:  How can you say that it meets the

14:37:15  5   standard for contributory infringement if, in fact, some

14:37:18  6   substantial percentage don't use it?

14:37:26  7          MR. CHAN:  I'm sorry, I missed that.

14:37:28  8          THE COURT:  Contributory infringement, how do

14:37:30  9   you meet the standard for contributory infringement if some

14:37:35 10   substantial portion of people who buy what you're calling

14:37:40 11   the accused instrumentalities don't use the infringing part?

14:37:44 12          MR. CHAN:  I think the debate now is whether

14:37:46 13   there are a lot of people that are using it --

14:37:49 14          THE COURT:  That's not for contributory

14:37:51 15   infringement.  What's the test for contributory

14:37:54 16   infringement?

14:37:55 17          MR. CHAN:  Right.  I think we have already

14:37:56 18   stated our case here, you can't detach the nav bar from the

14:38:01 19   instrumentality.  They're both being used --

14:38:04 20          THE COURT:  But you have to use the nav bar to

14:38:06 21   infringe.

14:38:07 22          MR. CHAN:  Correct.

14:38:08 23          THE COURT:  They're not saying oh, I'm going to

14:38:10 24   take away something that people don't use.  But you actually

14:38:14 25   -- the way you infringe is you use it, right?

14:38:18  1            MR. CHAN:  Right.  And they use the nav bar to

14:38:20  2    program and write code which I already stated earlier.

14:38:23  3            THE COURT:  Okay.  But I thought we just agreed

14:38:25  4    that they gave you the numbers of folks who do it and it's

14:38:29  5    not all folks who do it, right?

14:38:32  6            MR. CHAN:  I think this is relative, right,

14:38:34  7    what's a lot to them, it may not be a lot for us.  Bottom

14:38:38  8    line is we're talking millions of users, that is not

14:38:43  9    miniscule by any measure.

14:38:44 10            THE COURT:  That's not the test for contributory

14:38:47 11    infringement.

14:38:48 12            MR. CHAN:  No.  At the same time I think the

14:38:50 13    case law is pretty clear as far as what we need to plead

14:38:53 14    contributory infringement.  And I don't think the reply

14:38:56 15    address, the fact that we don't need to plead a known set,

14:38:56 16    that there is no non-infringed -- excuse me, that there is

14:38:59 17    no substantial non-infringing use.  You can't plead those

14:39:04 18    facts absent discovery.

14:39:07 19            THE COURT:  Well, then, maybe you shouldn't be

14:39:08 20    pleading it at all and you should ask to amend your

14:39:12 21    pleadings if you don't have facts on which you can sustain

14:39:12 22    it.

14:39:12 23            MR. CHAN:  We do believe we have facts.  Let me

14:39:17 24    just go to the complaint, we can walk through the complaint

14:39:20 25    together.  So for example, paragraphs 39 and 40 where we

14:39:46  1    pled facts under 271(c).

14:39:55  2              THE COURT:  Do you want to be specific because I

14:40:00  3    don't know what -- all it just says is they contribute, they

14:40:05  4    contribute, they contribute, they contribute.  And I think

14:40:07  5    part of the problem I'm having is your accused

14:40:12  6    instrumentalities is broader than the particular thing that

14:40:15  7    is doing the infringing.  And so if you want to just broadly

14:40:20  8    say accused instrumentalities and we mean everything that

14:40:24  9    you sell, whether people use that -- actually use the

14:40:32 10    infringing thing or not, then I don't know how you meet the

14:40:35 11    standard for contributory infringement.  If you want to say

14:40:40 12    only these with the nav bar that's being used, then maybe.

14:40:46 13    I don't know.  But I don't see when you define it as the

14:40:50 14    accused instrumentalities which is super broad you can say

14:40:54 15    yeah, sure, there is no substantial non-infringing use

14:40:58 16    there.

14:40:59 17              MR. CHAN:  The case law is pretty clear, we have

14:41:01 18    to identify the products by name and that's why we

14:41:04 19    identified those products and then we collectively call

14:41:08 20    those accused instrumentalities --

14:41:09 21              THE COURT:  I am going to grant it with respect

14:41:11 22    to contributory infringement.  And if you find information

14:41:14 23    that you think would allow you to -- during discovery that

14:41:19 24    you think would allow you to plead contributory infringement

14:41:24 25    that what we're talking about, the component, or if you're

14:41:30  1    going to go with -- I just don't know, I think it's because

14:41:33  2    you're defining this accused instrumentality so broadly that

14:41:38  3    it is not something that doesn't have a substantial

14:41:44  4    non-infringing use.  If you're going to limit it somehow to

14:41:50  5    only the things of this nav bar, then maybe you could do it,

14:41:53  6    but as it's currently pleaded, I think it's insufficient and

14:41:57  7    I am going to grant that motion.  But I will do so again

14:41:59  8    without prejudice, if you find information in discovery you

14:42:04  9    can timely move to amend.

14:42:06 10              MR. CHAN:  Thank you, Your Honor.  So would you

14:42:09 11    prefer that we do not amend the complaint --

14:42:12 12              THE COURT:  I'm not going to give you strategic

14:42:16 13    advice.  You should do what you think should be done and

14:42:20 14    that you can well plead what you need to plead.

14:42:23 15              MR. CHAN:  Thank you, Your Honor.

14:42:24 16              THE COURT:  All right.  Those are all the issues

14:42:26 17    in the motion to dismiss.  It is granted in part and denied

14:42:29 18    in part for the reasons I have stated on the record.

14:42:31 19              Anything else that we need to talk about while

14:42:34 20    we are here?

14:42:35 21              MR. VIVARELLI:  Nothing from the defendants,

14:42:36 22    Your Honor.

14:42:37 23              MR. CHAN:  Nothing from plaintiffs.

14:42:38 24              THE COURT:  All right.  Thank you everyone.

14:42:39 25              COURT CLERK:  All rise.  Court is adjourned.

1          (Court adjourned at 2:42 p.m.)

2

3          I hereby certify the foregoing is a true and
   accurate transcript from my stenographic notes in the proceeding.
4

5                              /s/ Dale C. Hawkins
                             Official Court Reporter
6                              U.S. District Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25