IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CADDO SYSTEMS, INC. and )
511 TECHNOLOGIES, INC., )
  )
    Plaintiffs, )
  )
        v. )    C.A. No. 22-1033-JLH-LDH
  )
JETBRAINS AMERICAS INC., )
JETBRAINS INCORPORATED, and )
JETBRAINS S.R.O., )    FILED
  )
    Defendants. )
                                                  FEB 2 5 2025

                                                  U.S. DISTRICT COURT DISTRICT OF DELAWARE

## REPORT AND RECOMMENDATION

Pending before the Court are the following motions:

(i)    Defendant JetBrains Americas Inc.'s ("Defendant" or "JBA") Motion to Dismiss Plaintiff Caddo System, Inc. and 511 Technologies, Inc.'s Second Amended Complaint for Patent Infringement for failure to state a claim (D.I. 177);

(ii)    Defendants JetBrains s.r.o and JetBrains Incorporated's Motion to Dismiss Plaintiffs' Second Amended Complaint for insufficient service of process and for lack of personal jurisdiction (D.I. 200);

(iii)    Plaintiffs' Motion to Exclude Certain Opinions and Testimony of Mr. W. Christopher Bakewell (D.I. 265);

(iv)    JBA's Motion to Exclude Certain Opinions of Mr. Sherwood and Mr. Holzen (D.I. 268);

(v)    JBA's Motion for Summary Judgment (D.I. 269);

(vi)    Plaintiffs' Motion to Exclude Expert Testimony of Monty Myers' Opinions Regarding Noninfringement (D.I. 275);

(vii)    Plaintiffs' Motion for Partial Summary Judgment (D.I. 278); and

(viii)    Plaintiffs' Motion to Exclude Certain Opinions and Testimony of Monty Myers Regarding Invalidity (D.I. 283).

As set forth below, I recommend that JBA's Motion for Summary Judgment (D.I. 269) be GRANTED because the Asserted Claims are not directed to patentable subject matter under 35 U.S.C. § 101. I further recommend denying as moot the remaining above-referenced pending motions.

## I.    LEGAL STANDARDS

### A. Summary Judgment

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626-LPS, 2017 WL 3586863, at *1 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A), (B)). A factual dispute is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### B.  Patent Eligibility Under 35 U.S.C. § 101

Section 101 defines the categories of subject matter that are patent eligible.  It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  The Supreme Court has recognized three exceptions to the broad statutory categories of patent-eligible subject matter: "laws of nature, natural phenomena, and abstract ideas" are not patent-eligible. *Diamond v. Diehr*, 450 U.S. 175, 185 (1981).

The Supreme Court has established a two-step test for determining whether patent claims are invalid under 35 U.S.C. § 101.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  At step one, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218.  This first step requires the court to "examine the 'focus' of the claim, i.e., its 'character as a whole,' in order to determine whether the claim is directed to an abstract idea." *Epic IP LLC v. Backblaze, Inc*., 351 F. Supp. 3d 733, 736 (D. Del. 2018) (Bryson, J.) (quoting *SAP Am., Inc. v. InvestPic*, LLC, 898 F.3d 1161, 1167 (Fed. Cir. 2018)); *Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

Because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012), "courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO Inc. v. Bandai Namco Games Am. Inc*., 837 F.3d 1299, 1313 (Fed. Cir. 2016) (quoting *In re TLI Commc'ns LLC Pat. Litig*., 823 F.3d 607, 611 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at [too] high [a] level of abstraction

3

and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016). If the claims are not directed to a patent-ineligible concept, then the claims are patent-eligible under § 101 and the analysis is over. If, however, the claims are directed to a patent-ineligible concept, then the analysis proceeds to step two.

At step two, the court "consider[s] the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (citation and internal quotation marks omitted). "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *TLI Commc'ns*, 823 F.3d at 613. Thus, "[m]erely reciting the use of a generic computer or adding the words 'apply it with a computer'" does not transform a patent-ineligible concept into patent-eligible subject matter. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. at 223). Nor is there an inventive concept when the claims "[s]imply append [] conventional steps, specified at a high level of generality" to a patent ineligible concept. *Alice*, 573 U.S. at 222. Conversely, claims pass muster at step two when they "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and internal quotation marks omitted). "The mere fact that something is disclosed in a piece of prior art . . . does not mean it was well-understood, routine, and conventional." *Id.* at

4

1369.  Moreover, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

"Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish*, 822 F.3d at 1334.

## II.    BACKGROUND

Plaintiffs' Second Amended Complaint alleges, *inter alia*, that Defendant infringes claims 1–4 and 6 of U.S. Pat. No. 7,191,411 ("the '411 patent"), claims 1–6 of U.S. Pat. No. 7,640,517 ("the '517 patent"), claims 1–10 and 12–22 of U.S. Pat. No 8,352,880 ("the '880 patent"), claims 14–25 of U.S. Pat. No. 10,037,127 ("the '127 patent"), and claims 1–6, 8–10, and 12–17 of U.S. Pat. No. 11,182,053 ("the '053 patent") (collectively the "Asserted Patents") (D.I. 169). The '411 and '517 patents' common specification is the "parent" specification, and the '880, '127, and '053 patents' common specification is the continuation-in-part disclosure which includes additional disclosures.  (D.I. 270 at 9).

By stipulation, Plaintiffs narrowed the case three times: first reducing the asserted claims to 30; then to 15; and, finally, to 10.  (D.I. 230, 233, 263, 340).  Plaintiffs' third reduction of the asserted claims, filed on January 24, 2025, dropped the '411 patent and reduced the asserted claims as follows: (1) '517 patent: Claim 4; (2) '880 patent: Claims 3, 8 and 21; (3) '127 patent: Claims

12, 17, 21 and 25; and (4) '053 patent: Claims 1 and 14 (collectively the "Asserted Claims"). (D.I. 340).

The Asserted Patents claim methods for navigating within a menu or information structure more usefully and efficiently. For example,[1] claim 1 and dependent claims 3 and 4 of the '517 patent state:

> 1. A method for navigating within a multi-level hierarchical menu structure where each level in the menu contains plural items, said method comprising the steps of:
>
>> providing a graphical user menu system displaying the items of a given level and enabling selection thereof, wherein access of said given level requires sequential access of each of the levels preceding said given level in the hierarchy;
>>
>> constructing an Active Path as a sequence of hierarchical active links as items are selected upon the graphical user menu system, with one said active link corresponding to each of the items selected, each said active link providing direct access to the hierarchical level from which the corresponding item was selected without using said graphical user menu system;
>>
>> displaying the Active Path as an alternative to the graphical user menu system for navigating the menu structure after the user has finished selecting items using the graphical user system such that the Active Path is displayed;
>>
>> wherein rolling over a given active link with the pointer of a pointing device triggers the display of menu items on the hierarchical level associated with said given active path link without disturbing the displayed Active Path.
>
> 3. The method for navigating according to claim 1, wherein a given active link is browsed by rolling over the given active link with a

---

[1] In the interest of brevity, I have not included the text of every Asserted Claim, and my report and recommendation assumes familiarity with the intrinsic records of the asserted patents, the parties' briefs, and the documents cited therein.

> pointing device to trigger the display of sibling menu items on the level associated with said given active link.
>
> 4. The method for navigating according to claim 3, wherein browsing a given active menu item triggers the display of subordinate menu items.

The Asserted Claims do not cover a complicated concept. In plain English, the Asserted Claims allow a user to more easily navigate a file structure that may have many layers and options.

The parties filed a Joint Claim Construction Brief on March 22, 2024, and the Court held a Markman Hearing on June 5, 2024, issuing its Report and Recommendation on claim construction on September 6, 2024. (D.I. 179, 248). Fact discovery concluded on October 13, 2023, and expert discovery concluded on October 11, 2024. (D.I. 105, 234). Defendant timely moved for summary judgment, arguing that the Asserted Claims were invalid under 35 U.S.C. § 101. Briefing on the summary judgment motion was completed on November 15, 2024. (D.I. 269, 308, 323). In its briefing, Defendant argued that claim 6 of the '411 patent was representative for § 101 purposes. (D.I. 270 at 10–12). Plaintiffs disputed representativeness. (D.I. 312 at 5–7). Thereafter, on January 24, 2025, Plaintiffs dropped the '411 patent from the case. (D.I. 340). I requested supplemental briefing regarding whether Defendant contended that there was still a representative claim in the case for § 101 purposes and, if so, which one. (D.I. 341, 343, 344). Defendant identified claim 4 of the '517 patent as representative. Plaintiffs continue to dispute representativeness.

## III.    DISCUSSION

### A. Whether Claim 4 of the '517 Patent Is Representative of the Other Asserted Claims.

Defendant argues, and I agree, that claim 4 of the '517 patent ("claim 4") is representative for § 101 purposes. Courts can treat a claim as representative for purposes of a § 101 analysis if

7

"the patentee does not present any meaningful argument for distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 881 F.3d at 1365.

Defendant argues that the Asserted Claims are directed to "the abstract idea of providing a menu, constructing a sequence of links that replicate selections made while navigating the menu, and displaying those links as a second, duplicative navigation interface," (D.I. 343 at 4), and that the remaining Asserted Claims include no features "that would require them to be considered separately from [a] representative [claim]." (D.I. 270 at 12). In asserting that claim 4 is representative, Defendant identifies three common elements present in each of the 10 Asserted Claims: (1) "providing a menu or similar hierarchical structure"; (2) "[c]onstructing a sequence of links (the 'Active Path') that duplicate selections from the menu"; and (3) "[d]isplaying the sequence of links in a second menu, where interacting with a link provides access to related items in the original menu." (*Id.* at 7–9).[2]

Defendant acknowledges that there are differences in the language of the remaining Asserted Claims as compared to claim 4 but argues that such differences do not prevent the Asserted Claims from being conceptually equivalent for purposes of a § 101 analysis. I agree. By way of example, Plaintiffs' expert, Mr. Robert Sherwood, asserts in his Opening Report that, "pre-selecting an active link is equivalent to selecting the active link using a mouse or highlighting the active link using the keyboard or keyboard shortcut because the latter performs the same function

---

[2]     In its supplemental briefing, Defendant identified a fourth common element: "menu items in the active path are displayed when an active link is pre-selected, rolled over, or the like". (D.I. 343 at 3). While pre-selection, rolling over, and other manners of interacting with the Active Path are not interchangeable, they are closely related enough insofar as an action is required for interaction with the Active Path in the Asserted Claims.

in the same way to provide the same result." (D.I. 272, Ex. 2 ¶ 370).[3] Ultimately, slight differences in language aside, Defendant argues that the differing mechanisms by which a user interacts with the Active Path itself makes no difference to the § 101 analysis; that is, the mechanism by which a user "activates, selects, or otherwise interacts with an active link in the active path makes no difference as to whether the Asserted Claims are directed to an abstract idea without something more." (D.I. 270 at 4).

Plaintiffs dispute that claim 4 is representative but they do not point to any limitation in any Asserted Claim that either by itself or in combination with another limitation *meaningfully distinguishes* claim 4 for § 101 patentability purposes. Instead, they point out that "truncation" and "search function" are terms that exist in the '880 and '127 patents, but not in claim 4 of the '517 patent. Plaintiffs further argue that claim 4 of the '517 patent focuses on the structure of a constructed Active Path, while claims 8 and 21 of the '880 patent and claims 12, 21, and 25 of the '127 patent are focused on the functionalities of a constructed Active Path. (D.I. 312 at 6, 7). But Plaintiffs offer no helpful elaboration of these arguments; and, in any event, the relevant question is whether claim 4 of the '517 patent is representative for purposes of evaluating the Asserted Claims under § 101—that is, whether the claims at issue are "substantially similar" and linked to the same "ineligible concept"—not whether the claims are identical or use identical language. "Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v.*

---

[3]    Defendant also points out that, regarding representativeness, Plaintiffs' own expert incorporates his analysis of claim 1 of the '411 by reference "68 times in his analysis of the other Asserted Patents" and "62 times in his Rebuttal Invalidity Report." (D.I. 270 at 11). While this may be true, Plaintiffs correctly respond that an expert may reference and incorporate certain language in one claim when asserting that a patent is infringed; doing so is not necessarily an admission of representativeness. (D.I. 344 at 5–6).

*Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)).

Plaintiffs' reliance on *Diogenes Limited v. DraftKings, Inc.* is, likewise, misplaced. (D.I. 272 at 18–20) (citing No. 21-1695-MN-CJB, D.I. 46 at 9–10 (D. Del. July 18, 2022)). In *DraftKings*, Judge Burke rejected defendant's argument on representativeness because the defendant's motion, which implicated "27 other asserted claims across the seven other patents[—]patents that together include a total of 376 claims," only addressed "a very small number of asserted claims, none with any specificity . . . . [giving] the Court almost no argument or way to meaningfully analyze" defendant's arguments. *DraftKings*, No. 21-1695-JLH-CJB (D.I. 46 at 10). Judge Burke further noted that "[w]hat was plain was that Defendant was straining to cram in argument about a huge smorgasbord of claims that could not responsibly be argued in just one motion like this." *Id.*; *see also Diogenes Limited v. DraftKings, Inc.*, 623 F.Supp.3d 423 (D. Del. Aug. 26, 2022) (overruling objections and adopting Judge Burke's Report and Recommendation). That is not the case here. Defendant provided specific claim language to support its argument that the claims are substantially similar, provided a detailed chart comparing the same along with pages of analysis, and Plaintiffs have failed to provide a showing of distinctive significance between the Asserted Claims.

Accordingly, I perform my analysis of the eligibility of the Asserted Claims under the determination that claim 4 is representative of all Asserted Claims.[4]

---

[4]    I have carefully reviewed the other Asserted Claims and they are likewise directed to organizing and displaying information. So, even if I disagreed with Defendant on the issue of representativeness, my analysis and recommendation that the Court grant summary judgment in favor of Defendant would not change.

### B. *Alice*, Step 1

Defendant contends that claim 4 is directed to the abstract idea of providing a menu, constructing a sequence of links that duplicate selections from the menu, and displaying the sequence of links as a second menu. (D.I. 270, at 4, 14). Plaintiffs complain that Defendant "grossly oversimplify[ies] the Asserted Patents" and that the Asserted Patents are actually "directed to the provision of a novel graphical menu interface and the construction of an Active Path for navigating information structures more usefully, efficiently, and intuitively—whether that structure is a file system, a database, a folder, a web page, or other information structures . . . ." (D.I. 312 at 5).

The Federal Circuit has repeatedly held that many user-interface claims and those directed to collecting and displaying information are abstract. *See, e.g.*, *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 788 (Fed. Cir. 2019) ("synchronous communications and automatic formatting of a programmed handheld menu configuration ('PHMC') that is generated using a master menu and that can displace cascaded sets of . . . . screens" is abstract); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1234 (Fed. Cir. 2016) ("The patent specifications disclose a first menu that has categories and items, and software that can generate a second menu from that first menu by allowing categories and items to be selected"); *IBM v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) (finding claims directed to the idea of responding to a user's selection of an area on a map by simultaneously updating the map and displaying a list of items on the map abstract because "[i]dentifying, analyzing, and presenting certain data to a user is not an improvement specific to computing."); *Robocast, Inc. v. Netflix, Inc.*, No. 22-305-JLH, slip op. at

11

4 (D. Del. Feb. 21, 2025) (invalidating patents that were directed organizing and displaying playlists of content, and noting that "[c]alling something a technical solution does not make it so").

Defendant argues that claim 4 simply improves user experience, without more, meaning the claims are not patent-eligible. In evaluating Defendant's arguments and determining what the claim is "directed to," I read claim 4 in light of the specification, but my reliance on the specification must always "yield to the claim language" in determining the focus of the claim. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). In so yielding, these steps reveal that the focus of the claim is on an improved user experience that could be replicated by pen and paper drawing out the file navigation options, or a series of sticky notes mapping out a file structure, and not an improvement on technology. Indeed, Plaintiffs tacitly acknowledge as much when arguing that "[n]avigating a website using . . . a conventional system, however, required users to memorize and enter complex URL sequences . . . . As the number of levels increased, the path also became more complex and long, rendering it nearly impossible for users to memorize the entire sequence of the path." (D.I. 312 at 10). But memorization is not necessary. With pen and paper, sufficient time, or a diagram of sticky notes, the file path could be created and consulted. All that claim 4 does, then, is make the human process of navigating a file structure more efficient; the invention is rooted in an idea of improved user experience, not an improvement in technology. This is abstract. A patent that "automate[s] 'pen and paper methodologies' to conserve human resources" is a "quintessential 'do it on a computer' patent" that is directed to abstract idea. *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

Plaintiffs rely on *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), in which the Federal Circuit considered the eligibility of "improved display interfaces,

particularly for devices with small screens . . . [that] allow a user to more quickly access desired data stored in, and functions and applications included in, the electronic devices." *Id.* at 1359. Plaintiffs argue that the interfaces found patent eligible in *Core Wireless* are like those here because the Asserted Claims disclose specific methods and systems "that display a limited set of information to a user . . . which help make navigation easier and more efficient by solving the problems and drawbacks of navigating such information using conventional prior art interfaces." (D.I. 312 at 11). In particular, Plaintiffs contend that the claims discuss the "valuable real estate in space-limited environment[s]." (*Id.* at 10–14). But most of that argument relates back to the '411 patent, which Plaintiffs dropped, and Mr. Sherwood's expert report, which contains no citations, or even references, to specifications or limitations of the Asserted Patents.[5] (*Id.*). Plaintiffs also cite to claim 8 of the '880 patent and claim 21 of the '127 patent which discuss "truncation." (*Id.* at 6; D.I. 344 at 2–4). But nowhere in the limitations does the claim discuss *how* truncation of the Active Path improves screen real estate, and the specifications of these patents only mention "real-estate" once. ('127 patent at 7:24–26; '880 patent at 7:4–7 (same)).

Defendant further point out that the technology in *Core Wireless* was patent eligible not because of mere improvement in user experience, but because the technology disclosed a "specific manner of displaying a limited set of information to the user" and was directed to "an improvement in the functioning of computers, particularly those with small screens." *Core Wireless*, 880 F.3d at 1363. The Federal Circuit explained that the *Core Wireless* technology was patentable "because it addressed problems specific to navigating applications on small screens, as repeatedly

---

[5]    I have carefully reviewed the cited portions of Plaintiffs and Defendant's experts, and nothing I reviewed persuades me that the Asserted Claims are patent eligible.

emphasized by the patent's specification." *IBM*, 50 F.4th at 1381 (contrasting the technology in *IBM* with the technology in *Core Wireless*).[6]

Defendant has the better argument. As explained by the Federal Circuit in rejecting IBM's contention that its technology was analogous to the patent-eligible technology in *Core Wireless*, just as here, the technology "is not limited to computer screens or any device at all. The method it recites . . . has long been done" by humans, by hand. *IBM*, 50 F.4th at 1381. Here, too, the specification does not discuss improvements to technology; only a user experience. The claims simply take the abstract method and add generic and conventional computer components for navigating information—precisely the "apply it on a computer" directive that *Alice* teaches is insufficient to convert abstract ideas into patentable technology.

Ultimately, there is no limitation in the Asserted Claims for the type of program the technology can be used with, the size of the screen it is implemented upon, nor that the items in the menu exist in any "particular state" as those from *Core Wireless*. 880 F.3d at 1362–63 (finding patent eligibility when there was a specified "particular manner" of accessing the window, "restrain[ing] the type of data . . . displayed", and a "requirement that the device applications exist in a particular state"). Claim 1 of the '517 patent requires "providing a graphical user menu system displaying the items of a given level and enabling selection thereof." However, the claim language provides no particular manner by which the graphical user menu must be accessed. So, at the end of the day, I cannot agree with Plaintiffs' assertion that the patents ought to be eligible because the Active Path "offers significant usability benefit of reducing screen real estate, improving

---

[6]     *See also Rideshare Displays, Inc. v. Lyft, Inc.*, No. 20-1629-RGA-JLH, 2021 WL 2915076, at *4 (D. Del. July 12, 2021), *report and recommendation adopted in part*, No. 20-1629-RGA, 2021 WL 4477242 (D. Del. Sept. 30, 2021) ("A second line of cases, including *Enfish* and *Core Wireless*, draws the distinction between claims that are directed to an improvement in computer technology and claims that use a computer to perform typical computer tasks.").

navigation efficiency and minimizing search time." (D.I. 344 at 9). That language is not in the claims and, in any event, ease of access for a user cannot, in and of itself, render a patent-ineligible concept patent eligible under § 101. *Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020) (noting that failure to "explain how the computer's functionality is improved beyond inherent improvement of the experience of a user who cannot (or maybe, would rather not) [memorize and enter complex URL sequences]" is fatal, and "'improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality.'") (quoting *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (citing *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092–93 (Fed. Cir. 2019))); *see* (D.I. 312 at 10); '517 patent at 2:18–19.[7]

In addition, even if "creating an Active Path" could be construed as something of a novel display environment to bring the claim closer to *Core Wireless*, the Asserted Claims here do not describe how the Active Path is created or how it is displayed; instead, the claims treat the Active Path as a result. *See, e.g.*, *Move, Inc. v. Real Est. All. Ltd.*, 721 F. App'x 950, 955 (Fed. Cir. 2018) ("While the claim limitations provide steps for using the computer to perform the search, they contain no technical details or explanation of how to implement the claimed abstract idea using the computer. Absent such a disclosure, we cannot conclude that claim 1 covers anything more than the use of a computer for conventional business purposes."). And, merely because a claim covers software does not make it a technical solution. *See Broadband iTV, Inc. v. Amazon.com*

---

[7]     Plaintiffs admit that "the Asserted Patents are directed to improving known navigation technologies and improved use of *computers as a tool* for software development." (D.I. 312 at 19) (emphasis added); *Enfish*, 822 F.3d at 1336 ("a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool" is not patent-eligible). Moreover, navigating multiple levels as the number of levels increases is not "nearly impossible," as Plaintiffs now argue (D.I 312 at 10); it is merely "extremely cumbersome." '517 patent at 2:21–23.

*Inc.*, 113 F.4th 1359, 1368–69 (Fed. Cir. 2024) (explaining that reordering content within a user interface "is not a sufficient technological solution to a technological problem, but rather a results-oriented abstract idea").

Moreover, the claims and specification in *Core Wireless* contained an improvement in the functioning of computers, particularly those with small screens; here, the claims do not indicate that they are directed at a specific display environment, and the specification indicates that the invention can be used in standalone applications ('517 patent at 6:21–23, 26–29, 47–50), functions provided on web browsers (*id.* at 6:23–25, 40–44, 66–7:5), client-server applications (*id.* at 6:59–65), operating systems (*id.* at 6:19–22), and audio interfaces (*id.* at 7:6–7), none of which have the display size limitations that the Federal Circuit found persuasive in *Core Wireless*.[8] So, unlike the claims asserted in *Core Wireless*, the '517 patent provides no improvement to computer function nor does it recite claim limitations to a specific computing environment.[9] The Asserted Claims

---

[8]  Patents which claim the use of computers must do more than simply apply an abstract idea to the computer as a tool. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018) ("If a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one" of *Alice*.). The fact that a computer can perform such operations more rapidly and efficiently does not make an abstract idea any less abstract or any more patent-eligible. *See, e.g., Simio*, 983 F.3d at 1361 ("[c]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer is insufficient to render the claims patent eligible as an improvement to computer functionality." (internal citation and quotation marks omitted); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016); *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) ("Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.").

[9]  *Data Engine* and *Trading Techs.* are likewise unhelpful to Plaintiffs. In *Data Engine*, the Federal Circuit noted that the claim at issue "recites specific steps detailing the method of navigating . . . [and requires] a specific interface and implementation . . . ." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008–1009 (Fed. Cir. 2018). Here, the Asserted Claims have

are more analogous to those in *IBM* where the Federal Circuit found the claims to be "directed to limiting and coordinating the display of information based on a user selection." *IBM*, 50 F.4th at 1378.

Plaintiffs' reliance on Judge Hall's opinion in *Apple Inc. v. Masimo Corp.*, No. 22-1377-JLH, 2024 WL 4452466 (D. Del. Oct. 9, 2024), is similarly misplaced. Plaintiffs argue that in *Masimo*, Judge Hall found claims directed to a "wake screen interface" not abstract because the interface was "an improved user interface in computing devices" and the "claims were nonetheless directed to 'a particular manner of summarizing and presenting information in electronic devices.'" *Masimo*, 2024 WL 4452466, at *3. But Plaintiffs' characterization overlooks a material distinction. The claims in *Masimo* provided more than a mere improvement in user experience— the claims were directed to "power-saving benefits" as well. *Id.* Like *Core Wireless*, and unlike those here, the claims in *Masimo* provided both an improvement in user interface *and* an improvement to computer functioning. *Id.*

Finally, mindful of the Supreme Court's guidance that the machine or transformation test, while not the sole test for patent eligibility, "is a useful and important clue, an investigative tool, for determining whether some claimed inventions" satisfy § 101, *Bilski v. Kappos*, 561 U.S. 593, 604 (2010), I note that the machine or transformation test does not appear to be satisfied here. The abstract idea is not tied to any particular machine, such as the small screens at issue in *Core*

---

no such requirements, lack detail, and do not require a specific interface; instead, the Asserted Claims describe the result. Plaintiffs similarly argue that the asserted claims in *Trading Techs.* are like those here because both provide a more efficient user experience. But the claims in *Trading Techs.* "require[d] a specific, structured graphical user interface paired with a prescribed functionality" and did more than "simply claim displaying information on a graphical user interface," like the Asserted Claims here. *Trading Techs., Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004 (Fed. Cir. 2017). *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-1345-RGA, 2021 WL 4477022 (D. Del. Sept. 30, 2021), is distinguishable for the same reasons.

*Wireless*. Instead, as Defendant points out, "the Asserted Claims may be implemented on any computing device that can display menus." (D.I. 270 at 25).

Accordingly, I determine that at step one of the *Alice* analysis that the patents are directed to patent-ineligible subject matter and thus continue to the required step two.

### C. *Alice*, Step 2

Because I conclude that claim 4 (of the '517 patent), which is representative of all the Asserted Patents, is directed to an abstract idea, I turn to *Alice* step two where I consider "the claim elements individually and as an ordered combination to assess whether they 'transform the nature of the claim into a patent-eligible application of the abstract idea.'" *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1379 (Fed. Cir. 2024) (quoting *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017)). "A claim cannot rest on the patent-ineligible concept alone to transform the invention into something significantly more than that concept." *Id.* (citing *BSG Tech*, 899 F.3d at 1290). Instead, the claims must disclose "additional features . . . that constitute an inventive concept" and that are "more than well-understood, routine, conventional activity." *IBM*, 50 F.4th at 1379 (citation omitted). No party contends that at step two of the *Alice* inquiry, factual disputes preclude me from deciding whether the claims include an inventive concept or whether the claim limitations are well-understood, routine, and conventional. *See BSG Tech*, 899 F.3d at 1290 ("Whether a combination of claim limitations supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed is a question of law. Underlying factual determinations may inform this legal determination. . . in cases where the only issue at step two is whether claim limitations are well-

understood, routine, and conventional, a genuine dispute over that issue will preclude summary judgment that a claim is ineligible under § 101.") (citation omitted).[10]

Plaintiffs contend that "there are clear inventive concepts across the varied scope of the . . . Asserted Claims that solve recognized usability, accessibility, and other deficiencies in conventional navigation systems and methods." (D.I. 312 at 10). Specifically, Plaintiffs appear to emphasize as inventive the concept of an "active path" and "active links" to create a novel user interface and "facilitate[] the exploration of menus, items, and locations without the need to revisit the root or top node or level or the need to memorize and enter complex hierarchical sequences." (*Id.*). But these purportedly inventive concepts simply restate the abstract goals of the invention— that is, providing a menu, constructing a sequence of links that duplicate selections from the menu, and displaying the sequence of links as a second menu. Indeed, the '517 patent requires nothing more than generic computer technology, *e.g.*, '517 patent at 3:14–21, and its failure to provide any implementation details suggests that the "active path" and "active links" features employ existing computer capabilities. Plaintiffs do not contend otherwise.

Further, claim 4 neither teaches how these tasks are accomplished nor provides a new algorithm or method for doing any of those tasks. Instead, claim 4 states, in functional language, that the tasks should be performed. "[C]laims to 'an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using

---

[10]    In their supplemental submission, Plaintiffs cite (without elaboration) the rule that whether claims "perform well-understood, routine, and conventional activities to a skilled artisan is a genuine issue of material fact making summary judgment inappropriate with respect to these claims." (D.I. 344 at 5 (quoting *Berkheimer*, 881 F.3d at 1370)). Plaintiffs did not cite this proposition in their original Answering Brief opposing summary judgment. (D.I. 312). Nor do Plaintiffs offer any meaningful argument in either their Answering Brief or supplemental submission as to what material facts should preclude me from rendering a § 101 determination at this stage. Thus, to the extent Plaintiffs maintain that they contest summary judgment on the basis of disputed facts, I consider Plaintiffs to have long conceded this issue.

generic computer concepts in a conventional way' do not suffice at step two." *IBM*, 50 F.4th at 1379 (quoting *Bascom*, 827 F.3d at 1352). The specification makes clear that the Asserted Claims can be performed using conventional computer technology. (*See, e.g.*, '517 patent at 6:19–32, 47–65). And, although Plaintiffs assert that the "claimed active path and its active links are not functional in nature because they recite specific steps that accomplish the desired result" (D.I. 312 at 11) (citation and internal quotation marks omitted), Plaintiffs offer no analysis to buttress their contention and do not identify any claim that recites any such specific steps.

Relying on their expert, Plaintiffs maintain that the "unconventional combinations of features" in the claimed inventions "resolve a long-standing issue with prior art navigation methods and systems, and provide numerous improvements to navigation of complex information structures." (*Id.*). For example, Plaintiffs contend that the claimed inventions help users "find what they are looking for" by, for example, orienting users to avoid "losing track of their location within a complex structure of a code base, website, document, folder, structure, or database"; "allowing software developers to view a project from various vantage points within a code base and perform different tasks" therein; "minimizing complex interactions" within a system; "increasing the value of the source code" by easing navigation within it, including by reducing "clicks"; maximizing "screen real estate" over "conventional menu systems"; and "minimizing user frustration, stress." (D.I. 312 at 11–12). But the allegedly inventive concept that solves problems identified in the field is the abstract idea itself. "[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *ChargePoint*, 920 F.3d at 774 (quoting *BSG Tech*, 899 F.3d at 1290).

Moreover, I am unpersuaded by Plaintiffs' expert testimony because it is untethered from the claims. For example, the expert opines that the claimed invention provides "higher user retention and engagement with the code base" and reduces "unintended code fragment." (D.I. 312 at 11–12). Plaintiffs do not point to any claim reciting such features nor do they link these purported benefits to a claimed limitation.

Accordingly, "taken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) (citing *Alice*, 573 U.S. at 224). Because none of the claims recite an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application of the abstract idea, I conclude that the Asserted Patents claim ineligible subject matter under § 101.

## IV.    Conclusion

For the reasons previously stated, I recommend GRANTING Defendant JBA's Motion for Summary Judgment (D.I. 269) and denying as moot all other motions pending in this action.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.

21

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: February 25, 2025

_____
Laura D. Hatcher
United States Magistrate Judge